# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EQUAL EMPLOYMENT ) <br> OPPORTUNITY COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHNSTON AMBULANCE ) <br> SERVICE, INC., ) <br> ) <br> Defendant. ) <br> _____ ) | CIVIL ACTION NO. <br> 1:11 CV 1145 <br><br><br> COMPLAINT <br><br> **JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to Kristin Rudd, Jennifer Chatman, and Charles Chatman, who were adversely affected by such practices. As articulated below in greater detail, the U.S. Equal Employment Opportunity Commission (the "Commission") alleges that defendant Johnston Ambulance Service, Inc. ("Defendant") subjected Kristin Rudd (Rudd") and Jennifer Chatman ("J. Chatman") to a sexually hostile work environment because of their sex, female. The Commission further alleges that Defendant discharged Rudd, J. Chatman, and Charles Chatman ("C. Chatman") in retaliation for opposing the sexual harassment and/or for otherwise engaging in

protected activity.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the U.S. District Court for the Middle District of North Carolina.

## PARTIES

3.      Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant has been a North Carolina corporation and has continuously conducted business in the State of North Carolina and the City of Durham.  At all relevant times, Defendant has continuously had fifteen or more employees.

5.      At all relevant times, Defendant has continuously been an employer

engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Rudd, J. Chatman, and C. Chatman filed charges with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. From around early February 2009 through at least October 2009, Defendant engaged in unlawful employment practices at its facility in Durham, North Carolina, in violation of Sections 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1) and 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), as set forth below.

8. <u>Sexual Harassment – J. Chatman</u>. Defendant hired J. Chatman as an emergency medical technician – basic ("EMT-B") on or about October 15, 2008. Beginning in or around March 2009 continuing through and including July 2009, Defendant subjected J. Chatman to sexual harassment that created a sexually hostile work environment based on her sex, female. The harassment was perpetrated by two of Defendant's male employees, one of whom was an EMT and was J. Chatman's co-worker (hereafter "Co-Worker") and the other of whom was J. Chatman's supervisor (hereafter "Supervisor"). The harassment was severe or

3

pervasive in that it occurred on a daily or almost daily basis and involved physical touching.

9. More specifically, during the relevant period, the Co-Worker did the following among other things: grabbed J. Chatman's breasts on several occasions; rubbed his penis against her buttocks; rubbed his hand down her thigh; touched her arm while she was driving an ambulance; and stuck his hand down her shirt touching her cleavage. On several other occasions, the Co-Worker attempted to touch J. Chatman's breasts, but J. Chatman managed to move away or push the Co-Worker's hand away to keep him from touching her breasts. The Co-Worker made sexual comments to J. Chatman during some of these instances of touching or attempted touching, such as "You need to give me some;" "I know you want me to play with your boobs;" and "If you had this dick you'd have a real man," among other comments.

10. In addition to the sexual comments identified in paragraph 9 above, the Co-Worker made other sexual comments to J. Chatman on a daily or almost daily basis. The comments included but were not limited to such things as: "I have a big dick;" "All ya (sic) females need to get some of this dick;" "If I fuck you, you'd know that I'm da (sic) man;" "Can I see your boobs?;" and "You need to let me play with your tits." The harassment also included sexual gestures, including but not limited to the Co-Worker grabbing his trousers in the area of his

4

penis while making sexual comments like those identified above. J. Chatman repeatedly rejected the Co-Worker's sexual advances and told the Co-Worker to stop touching her and to stop making the sexual comments to her, but the Co-Worker continued his inappropriate sexual behavior.

11. The harassment by the Supervisor also occurred on an almost daily basis and took place beginning around April 2009 and continuing until at least June 2009. The harassment by the Supervisor included sexual comments including but not limited to such things as asking J. Chatman to text him photos of Rudd's or J. Chatman's mother's breasts; and telling J. Chatman that her mother has big "boobs." . The Supervisor also told J. Chatman that J. Chatman needed to "give [the Co-worker] some pussy" meaning have sexual intercourse with the Co-Worker; and would tell J. Chatman that the Co-Worker was her (J. Chatman's) "boyfriend." On several occasions, J. Chatman told the Supervisor to stop making these comments, but the comments continued.

12. J. Chatman did not welcome or invite the sexual touching, sexual comments or sexual gestures from the Co-Worker, and was offended by them. J. Chatman tried to avoid being touched by the Co-Worker and asked that she not be scheduled to work with him. J. Chatman also reported the Co-Worker's conduct to the Supervisor on several occasions between March 2009 and July 2009, but the harassment by the Co-Worker continued. J. Chatman also did not welcome or

5

invite the sexual comments from the Supervisor and thought the Supervisor's comments were inappropriate and offensive. J. Chatman asked the Supervisor to stop making the sexual comments to her. In response to J. Chatman's complaints, the Supervisor took no action to stop or prevent the harassment by the Co-Worker or to stop engaging in harassment of J. Chatman himself. Thus, the harassment continued after J. Chatman's complaints to the Supervisor.

13. <u>Sexual Harassment – Rudd.</u> Defendant hired Rudd as an EMT-B on September 27, 2007. From around early February 2009 until around late July 2009, Defendant subjected Rudd to sexual harassment that created a sexually hostile work environment based on her sex, female. The harassment was perpetrated by the same male Co-Worker and male Supervisor who sexually harassed J. Chatman. The harassment was severe or pervasive in that the Co-Worker made sexual comments to Rudd almost every time she worked with the Co-Worker, approximately three to four days per week. The Co-Worker also subjected Rudd to physical touching.

14. More specifically, the harassment of Rudd by the Co-Worker included but was not limited to the Co-Worker walking behind Rudd and rubbing his penis against her buttocks and the Co-Worker making sexual comments to Rudd like: "When are you going to let me play motor boat with your boobs?;" "When are you going to let me show you some things that your boyfriend can't do?;" and "when

6

are you going to give it up to me?" In or around March 2009, Rudd complained about the Co-Worker's comments to the Supervisor. Additionally, the Supervisor was present on several occasions when the Co-Worker made sexual comments to Rudd. Despite knowing that the Co-Worker was making inappropriate and unwelcome sexual comments to Rudd, the Supervisor failed to take any action to stop or prevent the Co-Worker's harassment of Rudd, and the harassment continued. Rudd told the Supervisor about the Co-Worker's harassment of her on at least one or more other occasions between March and May of 2009, but again the Supervisor took no action to stop or prevent the harassment.

15. The harassment of Rudd by the Supervisor also included sexual comments, including but not limited to: discussing Rudd's love life and telling Rudd that she should ask her boyfriend if he would "do it up the ass" to see if her boyfriend was a homosexual. The Supervisor also asked J. Chatman and C. Chatman to send him pictures of Rudd's breasts, which Rudd became aware of.

16. Rudd did not invite the sexual touching or comments from the Co-Worker and thought the touching and comments were inappropriate and offensive. Rudd took action to avoid the sexual harassment, including but not limited to complaining to the Supervisor about Co-Worker's inappropriate sexual touching and comments in or around March 2009 through July 2009 and telling the Co-Worker that his actions were unwelcome. Further, Rudd did not invite the sexual

7

comments from the Supervisor and thought the comments were inappropriate and offensive. In response to Rudd's complaints, the Supervisor took no action to stop or prevent the harassment. Although Rudd complained about the unwelcome sexual conduct to Defendant, and Defendant otherwise knew or reasonably should have known about the harassment, the harassment continued after Rudd's complaints to the Supervisor.

17. <u>Retaliation discharge – Rudd, J. Chatman and C. Chatman</u>. Defendant engaged in unlawful employment practices at its Durham, North Carolina facility in violation of Section 704(a) of Title VII, 42 U.S.C. § 20003-3(a), by discharging Rudd, J. Chatman, and C. Chatman because Rudd, J. Chatman, and C. Chatman opposed employment practices made unlawful by Title VII.

18. Specifically, Charles Chatman ("C. Chatman"), worked as an EMT-B for Defendant. C. Chatman is the brother of J. Chatman and during the relevant period was dating Rudd. In or around April 2009, C. Chatman complained to the Supervisor about the sexually hostile work environment at Defendant's facility. Additionally, on or about July 26, 2009, the parents of Rudd and the parents of J. Chatman and C. Chatman sent separate emails to Defendant's Chief of Operations complaining about the sexual harassment that Rudd and J. Chatman were being subjected to and advising that Defendant's Supervisor failed to take any remedial action to stop the sexual harassment.

8

19. On or about July 29, 2009, Defendant conducted an internal investigation where Rudd, J. Chatman and C. Chatman were individually questioned by Defendant's Assistant Chief of Operations ("Assistant COO") and Human Resources Director ("HR Director") regarding the reported sexual harassment of Rudd and J. Chatman. All three gave testimony supporting the sexual harassment allegations of Rudd and/or J. Chatman. Thereafter, on or around October 19, 2009, Rudd, J. Chatman, and C. Chatman were discharged because they allegedly were part of a "group of five" employees who had caused "issues" among Defendant's staff. However, the other two employees who were identified as a part of the "group of five" were not discharged.

20. Rudd, J. Chatman and C. Chatman were discharged in retaliation for opposing sexual harassment or for otherwise engaging in protected activity. In the alternative, as to C. Chatman, C. Chatman was discharged in retaliation because of his association with Rudd and/or J. Chatman.

21. The effect of the practices complained of above has been to deprive Rudd and J. Chatman of equal employment opportunities and otherwise adversely affect their status as employees because of their sex (female) and to deprive Rudd, J. Chatman, and C. Chatman of equal employment opportunities and otherwise adversely affect their status as employees because of their opposition to sexual harassment and/or for otherwise engaging in activity protected by Title VII.

22. The unlawful employment practices complained of above were intentional.

23. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Rudd, J. Chatman, and C. Chatman.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from maintaining a sexually hostile work environment or engaging in any other employment practice which discriminates on the basis of sex.

B. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from retaliating against employees who oppose unlawful discrimination, make a charge of unlawful discrimination, or participate in an investigation of unlawful discrimination.

C. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for women, which eradicate the effects of its past and present unlawful employment practices.

D. Order Defendant to make whole Kristin Rudd, Jennifer Chatman, and Charles Chatman, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices described above, including but not limited to reinstatement or front pay.

E. Order Defendant to make whole Kristin Rudd, Jennifer Chatman, and Charles Chatman, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to, relocation expenses, job search expenses, and/or medical expenses, in amounts to be determined at trial.

F. Order Defendant to make whole Kristin Rudd, Jennifer Chatman, and Charles Chatman, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

G. Order Defendant to pay punitive damages to Kristin Rudd, Jennifer Chatman, and Charles Chatman for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

H. Grant such further relief as the Court deems necessary and proper in the public interest.

I. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

DATED this 28th day of December, 2011.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
131 M. Street, NE
Fourth Floor, Suite 4NWO2F
Washington, D.C. 20507

**/s/ Lynette A. Barnes**
LYNETTE A. BARNES (NC Bar # 19732)
Regional Attorney

KARA GIBBON HADEN
Supervisory Trial Attorney

12

/s/ **Stephanie M. Jones**
STEPHANIE M. JONES (GA Bar #403598)
Trial Attorney
EQUAL EMPLOYMENT OPPOTURNITY
COMMISSION
Charlotte District Office
129 W. Trade Street, Suite 400
Charlotte, N.C. 28202
Phone:  (704) 954-6471
Fax:     (704) 954-6412
E-mail:  Stephanie.jones@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**